UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

FILED

JUN 25 2001

DAVID W. ...
U.S. DISTRICT COURT ~RK
E. DIST. NO. CAR.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Respondent, | * | Case No. 5:01-CV-479 |
| -vs- | * | Crim No. 5:93-CR-38-1-BR |
| DESMOND SKYERS, | * | |
| Petitioner. | * | |

\* \* \* \* \* \* \*

REQUEST TO DISPENSE WITH LOCAL COUNSEL

---

The Petitioner herein, through counsel, hereby requests that this
Court allow him to dispense with the requirement of local counsel
in this case. The Petitioner submits that current counsel has
already been granted pro hac vice status to appear as counsel for
this case. Counsel agrees to appear as necessary before this
Court, and continue to follow all local rules. Further, as the
Petitioner is without significant funds, the requirement of local
counsel would be unduly burdensome for this litigation.
Wherefore, the Petitioner requests that this Court allow him to
proceed without local counsel.

Respectfully submitted,

Kevin Schad
Attorney for Petitioner
Schad & Cook
6310 E. Kemper Rd.
Suite 125
Cincinnati, OH 45241
(513) 489-8990
fax (513) 469-5793

FILED

JUN 25 2001

DAVID W. ~~~ CLERK
U.S. DISTRICT COURT
E. DIST. NO. CAR.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Respondent, | * | |
| | * | Case No. 5:01-CV-479-BR |
| -vs- | * | Crim No. 5:93-CR-38-1-BR |
| DESMOND SKYERS, | * | |
| Petitioner. | * | |

\* \* \* \* \* \* \*

MOTION FOR MODIFICATION OF SENTENCE
PURSUANT TO 28 U.S.C. § 2255

The Petitioner submits this motion and memorandum of law in
support of his request for this Court to vacate his sentence, and
to order a new sentencing hearing in this case.    The Petitioner
contends that his right to due process, as provided in the 5th
Amendment, has been violated in this case.

**I.    BACKGROUND**

On February 23, 1993, the Petitioner was charged in a multi-
count indictment charging the Petitioner with: one count of
conspiracy to possess with the intent to distribute cocaine, in
violation of 21 U.S.C. § 846; one count of conspiracy to import
cocaine, in violation of 21 U.S.C. § 963 & 960(b); and two counts
of aiding and abetting in the importation of cocaine, in
violation of 21 U.S.C. § 952 and 18 U.S.C. § 2.

The Petitioner plead not guilty and proceeded to trial.    On
September 3, 1993, the jury returned a verdict of guilty against
the Petitioner as to all counts.    On January 18, 1994, the

Petitioner received a sentence of life imprisonment.

The Petitioner obtained new counsel, and subsequently appealed his sentence and conviction to the Fourth Circuit, raising the following issues:

    I.   There was insufficient evidence to support the convictions

    II.  The court erred in the admission of evidence under FRE 801(d)(2)(E)

    III. The court erred in failing to give an instruction

    IV.  The court erred in not striking the testimony of a witness

    V.   The court erred in allowing irrelevant information

    VI.  The amount of drugs was erroneously calculated

    VII. The Sentencing Guidelines for crack cocaine were unconstitutional

On March 13, 1996, the Fourth Circuit remanded on the issue of amount of drugs involved in the offense.  On remand, the Petitioner was re-sentenced to 360 months incarceration.

## II.  RELIEF REQUESTED

The Petitioner is entitled to vacation of his sentence, due to newly developed case law.  The Petitioner incorporates his memorandum in support with this motion, as proof of entitlement of relief.  The Petitioner submits that, due to these Constitutional violations, the sentence must be vacated.  At a minimum, the Petitioner contends that a hearing is necessary to resolve these issues.

Respectfully submitted,

Kevin Schad
Attorney for Petitioner
Schad & Cook
6310 E. Kemper Rd.
Suite 125
Cincinnati, OH 45241
(513) 489-8990
fax (513) 469-5793

**NOTE NEW ADDRESS EFFECTIVE 7/5/01**
**Schad & Cook**
**8240 Beckett Park Dr.**
**Indian Springs OH 45011**
**(513) 870-4980**
**Fax (513) 870-4984**

## VERIFICATION

Desmond Skyers, being first duly sworn, verifies that the facts stated in the foregoing motion and memorandum of law are true to the best of his knowledge and belief.

**TO BE SENT UNDER SEPARATE COVER**

_____
Desmond Skyers


STATE OF
      SS:
COUNTY OF

On this _____ day of _____, 2001, the above-signed, appeared before me, a notary public in and for the State of _____, and executed the foregoing instrument.

_____
Notary Public


My Commission Expires:

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Motion and Memorandum of Law appended hereto has been sent this 21st day of June 2001, by regular U.S. Mail with sufficient postage affixed to ensure delivery thereof to the office of the Assistant U.S. Attorney, 310 New Bern Ave., Suite 800, Raleigh NC 27601.


Kevin Schad
Attorney for Petitioner

## EXHIBIT A

Jury instructions

1  RECESS.  ALL RIGHT, WE'LL TAKE A TEN MINUTE RECESS.

2     (RECESS TAKEN)

3        THE COURT:  UNLESS YOU PARTICULARLY WANT TO,

4  MEMBERS OF THE JURY, YOU NEED NOT TAKE ANY NOTES OF WHAT

5  I'M GOING TO SAY TO YOU.  THE REASON BEING WHEN YOU RETIRE

6  TO DELIBERATE YOU WILL BE GIVEN A WRITTEN COPY OF MY

7  INSTRUCTIONS.  THEREFORE, IF YOU HAVE ANY DISAGREEMENTS

8  AMONG YOURSELVES AS TO WHAT I HAVE SAID, YOU CAN SIMPLY

9  REFER TO THE WRITTEN INSTRUCTIONS.

10    YOU HAVE NOW HEARD ALL OF THE EVIDENCE IN THE CASE AS

11  WELL AS THE FINAL ARGUMENTS OF THE LAWYERS FOR THE

12  PARTIES.  IT BECOMES MY DUTY, THEREFORE, TO INSTRUCT YOU

13  ON THE RULES OF LAW THAT YOU MUST FOLLOW AND APPLY IN

14  ARRIVING AT YOUR DECISION IN THE CASE.

15    IN ANY JURY TRIAL THERE ARE, IN EFFECT, TWO JUDGES.

16  I AM ONE OF THE JUDGES; THE OTHER IS THE JURY.  IT IS MY

17  DUTY TO PRESIDE OVER THE TRIAL AND TO DETERMINE WHAT

18  TESTIMONY AND EVIDENCE IS RELEVANT UNDER THE LAW FOR YOUR

19  CONSIDERATION.  IT IS ALSO MY DUTY, AT THE END OF THE

20  TRIAL, TO INSTRUCT YOU ON THE LAW APPLICABLE TO THE CASE.

21    YOU, AS JURORS, ARE THE JUDGES OF THE FACTS.  BUT IN

22  DETERMINING WHAT ACTUALLY HAPPENED IN THIS CASE, THAT IS

23  IN REACHING YOUR DECISION AS TO THE FACTS, IT IS YOUR

24  SWORN DUTY TO FOLLOW THE LAW I AM NOW IN THE PROCESS OF

25  DEFINING FOR YOU.  UNLESS OTHERWISE STATED, YOU SHOULD

1   CONSIDER EACH INSTRUCTION TO APPLY SEPARATELY AND

2   INDIVIDUALLY TO EACH DEFENDANT ON TRIAL.  AND YOU MUST

3   FOLLOW ALL OF MY INSTRUCTIONS AS A WHOLE.  YOU HAVE NO

4   RIGHT TO DISREGARD OR GIVE SPECIAL ATTENTION TO ANY ONE

5   INSTRUCTION, OR TO QUESTION THE WISDOM OR CORRECTNESS OF

6   ANY RULE I MAY STATE TO YOU.  THAT IS, YOU MUST NOT

7   SUBSTITUTE OR FOLLOW YOUR OWN NOTION OR OPINION AS TO WHAT

8   THE LAW IS OR OUGHT TO BE.

9       IT IS YOUR DUTY TO APPLY THE LAW AS I GIVE IT TO YOU,

10  REGARDLESS OF THE CONSEQUENCES.  BY THE SAME TOKEN, IT IS

11  ALSO YOUR DUTY TO BASE YOUR VERDICT SOLELY UPON THE

12  TESTIMONY AND EVIDENCE IN THE CASE, WITHOUT PREJUDICE OR

13  SYMPATHY.  THAT WAS THE PROMISE YOU MADE AND THE OATH YOU

14  TOOK BEFORE BEING ACCEPTED BY THE PARTIES AS JURORS IN

15  THIS CASE AND THEY HAVE THE RIGHT TO EXPECT NOTHING LESS.

16      THE INDICTMENT OR FORMAL CHARGE AGAINST A DEFENDANT

17  IS NOT EVIDENCE OF GUILT.  INDEED, THE DEFENDANT IS

18  PRESUMED BY THE LAW TO BE INNOCENT.  THE LAW DOES NOT

19  REQUIRE A DEFENDANT TO PROVE HIS OR HER INNOCENCE OR

20  PRODUCE ANY EVIDENCE AT ALL AND NO INFERENCE, WHATEVER,

21  MAY BE DRAWN FROM THE ELECTION OF A DEFENDANT NOT TO

22  TESTIFY.

23      THE GOVERNMENT HAS THE BURDEN OF PROVING EACH

24  DEFENDANT GUILTY BEYOND A REASONABLE DOUBT AND IF IT FAILS

25  TO DO SO, THE DEFENDANT MUST BE ACQUITTED.  WHILE THE

6a8

1   GOVERNMENT'S BURDEN OF PROOF IS A STRICT OR HEAVY BURDEN,

2   IT IS NOT NECESSARY THAT A DEFENDANT'S GUILT BE PROVED

3   BEYOND ALL POSSIBLE DOUBT.  IT IS ONLY REQUIRED THAT THE

4   GOVERNMENT'S PROOF EXCLUDE ANY REASONABLE DOUBT CONCERNING

5   THE DEFENDANT'S GUILT.

6      A REASONABLE DOUBT IS A REAL DOUBT BASED UPON REASON

7   AND COMMON SENSE AFTER CAREFUL AND IMPARTIAL CONSIDERATION

8   OF ALL THE EVIDENCE IN THE CASE.  PROOF BEYOND A

9   REASONABLE DOUBT, THEREFORE, IS PROOF OF SUCH A CONVINCING

10  CHARACTER THAT YOU WOULD BE WILLING TO RELY AND ACT UPON

11  IT WITHOUT HESITATION IN THE MOST IMPORTANT OF YOUR OWN

12  AFFAIRS.  IF YOU ARE CONVINCED THAT THE ACCUSED HAS BEEN

13  PROVED GUILTY BEYOND REASONABLE DOUBT, SAY SO.  IF YOU ARE

14  NOT CONVINCED, SAY SO.

15     AS STATED EARLIER, IT IS YOUR DUTY TO DETERMINE THE

16  FACTS AND IN SO DOING YOU MUST CONSIDER ONLY THE EVIDENCE

17  I HAVE ADMITTED IN THE CASE.  THE TERM EVIDENCE INCLUDES

18  THE SWORN TESTIMONY OF THE WITNESSES AND THE EXHIBITS

19  ADMITTED IN THE RECORD.  REMEMBER THAT ANY STATEMENTS,

20  OBJECTIONS OR ARGUMENTS MADE BY THE LAWYERS ARE NOT

21  EVIDENCE IN THE CASE.  THE FUNCTION OF THE LAWYERS IS TO

22  POINT OUT THOSE THINGS THAT ARE MOST SIGNIFICANT OR MOST

23  HELPFUL TO THEIR SIDE OF THE CASE AND IN SO DOING, TO CALL

24  YOUR ATTENTION TO CERTAIN FACTS OR INFERENCES THAT MIGHT

25  OTHERWISE ESCAPE YOUR NOTICE.  IN THE FINAL ANALYSIS,

1  HOWEVER, IT IS YOUR OWN RECOLLECTION AND INTERPRETATION OF

2  THE EVIDENCE THAT CONTROLS IN THE CASE.  WHAT THE LAWYERS

3  SAY IS NOT BINDING UPON YOU.

4      ALSO, DURING THE COURSE OF A TRIAL I OCCASIONALLY

5  MAKE COMMENTS TO THE LAWYERS OR ASK QUESTIONS OF A WITNESS

6  OR ADMONISH A WITNESS CONCERNING THE MANNER IN WHICH HE

7  SHOULD RESPOND TO THE QUESTIONS OF COUNSEL.  DO NOT ASSUME

8  FROM ANYTHING I MAY HAVE SAID THAT I HAVE ANY OPINION

9  CONCERNING ANY OF THE ISSUES IN THIS CASE.  EXCEPT FOR MY

10  INSTRUCTIONS TO YOU ON THE LAW, YOU SHOULD DISREGARD

11  ANYTHING I MAY HAVE SAID DURING THE TRIAL IN ARRIVING AT

12  YOUR OWN FINDINGS AS TO THE FACTS.

13      NOW, I HAVE SAID THAT YOU MUST CONSIDER ALL OF THE

14  EVIDENCE.  THIS DOES NOT MEAN, HOWEVER, THAT YOU MUST

15  ACCEPT ALL OF THE EVIDENCE AS TRUE OR ACCURATE.  YOU ARE

16  THE SOLE JUDGES OF THE CREDIBILITY OR BELIEVABILITY OF

17  EACH WITNESS AND THE WEIGHT TO BE GIVEN TO THE WITNESS'

18  TESTIMONY.  IN WEIGHING THE TESTIMONY OF A WITNESS, YOU

19  SHOULD CONSIDER THE FOLLOWING FACTORS.  THE RELATIONSHIP

20  OF THE WITNESS TO THE GOVERNMENT OR A DEFENDANT; THE

21  INTEREST OF THE WITNESS, IF ANY, IN THE OUTCOME OF THE

22  CASE; THE WITNESS' MANNER OF TESTIFYING; THE OPPORTUNITY

23  OF THE WITNESS TO OBSERVE OR ACQUIRE KNOWLEDGE CONCERNING

24  FACTS ABOUT WHICH THE WITNESS TESTIFIED; THE WITNESS'

25  CANDOR, FAIRNESS AND INTELLIGENCE AND THE EXTENT TO WHICH

1   THE WITNESS HAS BEEN SUPPORTED OR CONTRADICTED BY OTHER

2   CREDIBLE EVIDENCE.  YOU MAY, IN SHORT, ACCEPT OR REJECT

3   THE TESTIMONY OF ANY WITNESS IN WHOLE OR IN PART.

4        A WITNESS MAY BE DISCREDITED OR IMPEACHED BY

5   CONTRADICTORY EVIDENCE, BY A SHOWING THAT THE WITNESS

6   TESTIFIED FALSELY CONCERNING A MATERIAL MATTER OR BY

7   EVIDENCE THAT AT SOME OTHER TIME THE WITNESS HAS SAID OR

8   DONE SOMETHING OR HAS FAILED TO SAY OR DO SOMETHING WHICH

9   IS INCONSISTENT WITH THE WITNESS' PRESENT TESTIMONY.  IF

10  YOU BELIEVE THAT ANY WITNESS HAS BEEN SO IMPEACHED, THEN

11  IT IS YOUR EXCLUSIVE PROVINCE TO GIVE THE TESTIMONY OF

12  THAT WITNESS SUCH CREDIBILITY OR WEIGHT, IF ANY, AS YOU

13  MAY THINK IT DESERVES.

14       THE FACT THAT A WITNESS HAS PREVIOUSLY BEEN CONVICTED

15  OF A FELONY OR A CRIME INVOLVING DISHONESTY OR FALSE

16  STATEMENT IS ALSO A FACTOR YOU MAY CONSIDER IN WEIGHING

17  THE CREDIBILITY OF THAT WITNESS.  THE FACT OF SUCH A

18  CONVICTION DOES NOT NECESSARILY DESTROY THE WITNESS'

19  CREDIBILITY BUT IS ONE OF THE CIRCUMSTANCES YOU MAY TAKE

20  INTO ACCOUNT IN DETERMINING THE WEIGHT TO BE GIVEN TO THE

21  TESTIMONY OF THE WITNESS.

22       AS STATED EARLIER, A DEFENDANT HAS A RIGHT NOT TO

23  TESTIFY.  IF A DEFENDANT DOES TESTIFY, HOWEVER, THAT

24  TESTIMONY SHOULD BE WEIGHED AND CONSIDERED AND THE

25  CREDIBILITY OF THE DEFENDANT SHOULD BE DETERMINED IN THE

631

1  SAME WAY AS THAT OF ANY OTHER WITNESS.

2      IN THIS CASE, THE GOVERNMENT CALLED AS SOME OF ITS

3  WITNESSES ALLEGED ACCOMPLICES NAMED AS CO-DEFENDANTS IN

4  THE INDICTMENT WITH WHOM THE GOVERNMENT HAS ENTERED INTO

5  PLEA AGREEMENTS PROVIDING FOR THE DISMISSAL OF SOME

6  CHARGES AND LESSER SENTENCES THAN THEY WOULD OTHERWISE BE

7  EXPOSED TO FOR THE OFFENSES TO WHICH THEY PLED GUILTY.

8  SUCH PLEA BARGAINING, AS IT'S CALLED, HAS BEEN APPROVED AS

9  LAWFUL AND PROPER AND IS EXPRESSLY PROVIDED FOR IN THE

10 RULES OF THIS COURT.

11      AN ALLEGED ACCOMPLICE, INCLUDING ONE WHO HAS ENTERED

12 INTO A PLEA AGREEMENT WITH THE GOVERNMENT, DOES NOT

13 THEREBY BECOME INCOMPETENT AS A WITNESS.  ON THE CONTRARY,

14 THE TESTIMONY OF SUCH A WITNESS MAY ALONE BE OF SUFFICIENT

15 WEIGHT TO SUSTAIN A VERDICT OF GUILTY.  HOWEVER, THE JURY

16 SHOULD KEEP IN MIND THAT SUCH TESTIMONY IS ALWAYS TO BE

17 RECEIVED WITH CAUTION AND WEIGHED WITH GREAT CARE.

18      YOU SHOULD NEVER CONVICT A DEFENDANT UPON THE

19 UNSUPPORTED TESTIMONY OF AN ALLEGED ACCOMPLICE UNLESS YOU

20 BELIEVE THAT TESTIMONY BEYOND A REASONABLE DOUBT.  THE

21 FACT THAT AN ACCOMPLICE HAS ENTERED A PLEA OF GUILTY TO

22 THE OFFENSE CHARGED IS NOT EVIDENCE, IN AND OF ITSELF, OF

23 THE GUILT OF ANY OTHER PERSON.

24      SOME OF YOU JURORS HAVE TAKEN NOTES DURING THE COURSE

25 OF THIS TRIAL.  NOTES ARE ONLY AN AID TO MEMORY AND SHOULD

1    NOT BE GIVEN PRECEDENCE OVER YOUR INDEPENDENT RECOLLECTION

2    OF THE FACTS.   A JUROR WHO DID NOT TAKE NOTES SHOULD RELY

3    ON HIS OR HER INDEPENDENT RECOLLECTION OF THE PROCEEDINGS

4    AND SHOULD NOT BE INFLUENCED BY THE NOTES OF THE OTHER

5    JURORS.

6        MEMBERS OF THE JURY, THE INDICTMENT CONTAINS A TOTAL

7    OF FOUR COUNTS.   COUNTS ONE AND TWO ARE CHARGED AGAINST

8    EACH OF THE THREE DEFENDANTS AND COUNTS THREE AND FOUR ARE

9    CHARGED ONLY AGAINST THE DEFENDANT, DESMOND SAMUEL SKYERS.

10       COUNT ONE CHARGES THAT FROM ON OR ABOUT DECEMBER 15,

11   1985, UP TO AND INCLUDING MARCH OF THIS YEAR, THE

12   DEFENDANTS, DESMOND SAMUEL SKYERS, WAYNE JAGOO, AND

13   VINCENT CLAUDE SKYERS, DID KNOWINGLY AND INTENTIONALLY

14   COMBINE, CONSPIRE AND AGREE WITH EACH OTHER AND VARIOUS

15   OTHER PERSONS TO UNLAWFULLY IMPORT INTO AND EXPORT FROM

16   THE UNITED STATES A CONTROLLED NARCOTIC SUBSTANCE,

17   COCAINE, IN VIOLATION OF FEDERAL LAW.

18       COUNT TWO CHARGES THAT FROM ON OR ABOUT DECEMBER 15,

19   1985, UP TO AND INCLUDING MARCH OF THIS YEAR, THE

20   DEFENDANTS, DESMOND SAMUEL SKYERS, WAYNE JAGOO, AND

21   VINCENT CLAUDE SKYERS DID KNOWINGLY AND INTENTIONALLY

22   COMBINE, CONSPIRE AND AGREE WITH EACH OTHER AND VARIOUS

23   OTHER PERSONS TO UNLAWFULLY POSSESS WITH THE INTENT TO

24   DISTRIBUTE A CONTROLLED NARCOTIC SUBSTANCE, COCAINE, IN

25   VIOLATION OF FEDERAL LAW.

633

1    COUNTS THREE AND FOUR CHARGE THAT ON OR ABOUT

2    FEBRUARY 15, 1992, AND AGAIN ON OR ABOUT FEBRUARY 22,

3    1992, IN THE EASTERN DISTRICT OF NORTH CAROLINA, THE

4    DEFENDANT, DESMOND SAMUEL SKYERS, DID KNOWINGLY AND

5    INTENTIONALLY CAUSE THE IMPORTATION, FIRST OF

6    APPROXIMATELY 10 KILOGRAMS AND THEN OF ONE KILOGRAM OF

7    COCAINE INTO THE UNITED STATES FROM THE ISLAND OF ST.

8    MAARTEN, WHICH IS OUTSIDE THE UNITED STATES, IN VIOLATION

9    OF FEDERAL LAW.

10    COUNT ONE CHARGES THAT DESMOND SAMUEL SKYERS, WAYNE

11    JAGOO AND VINCENT CLAUDE SKYERS, CONSPIRED WITH EACH OTHER

12    AND WITH OTHER PERSONS TO IMPORT AND EXPORT COCAINE INTO

13    AND OUT OF THE UNITED STATES IN VIOLATION OF FEDERAL LAW.

14    TITLE 21, SECTION 952 PROVIDES, "IT SHALL BE UNLAWFUL

15    TO IMPORT INTO THE UNITED STATES FROM ANY PLACE OUTSIDE

16    THEREOF, ANY CONTROLLED SUBSTANCE."

17    TITLE 21, SECTION 953 PROVIDES, "IT SHALL BE UNLAWFUL

18    TO EXPORT FROM THE UNITED STATES TO ANY OTHER COUNTRY ANY

19    NARCOTIC DRUG."

20    AND TITLE 21 SECTION 963 PROVIDES THAT, "ANY PERSON

21    WHO CONSPIRES TO COMMIT ANY OFFENSE DEFINED IN THIS

22    SUBCHAPTER" IS PUNISHABLE UNDER FEDERAL LAW.

23    UNDER THE LAW, A CONSPIRACY IS A COMBINATION OR

24    AGREEMENT OF TWO OR MORE PERSONS TO JOIN TOGETHER TO

25    ATTEMPT TO ACCOMPLISH SOME UNLAWFUL PURPOSE.  IT IS A KIND

1    OF PARTNERSHIP IN CRIMINAL PURPOSES IN WHICH EACH MEMBER

2    BECOMES THE AGENT OF EVERY OTHER MEMBER.  THE GIST OR

3    ESSENCE OF THE OFFENSE IS A COMBINATION OR MUTUAL

4    AGREEMENT BY TWO OR MORE PERSONS TO DISOBEY OR DISREGARD

5    THE LAW.

6        THE EVIDENCE IN THE CASE NEED NOT SHOW THAT THE

7    ALLEGED MEMBERS OF THE CONSPIRACY ENTERED INTO ANY EXPRESS

8    OR FORMAL AGREEMENT OR THAT THEY DIRECTLY STATED BETWEEN

9    THEMSELVES THE DETAILS OF THE SCHEME AND ITS OBJECT OR

10   PURPOSE OR THE PRECISE MEANS BY WHICH THE OBJECT OR

11   PURPOSE WAS TO BE ACCOMPLISHED.

12       SIMILARLY, THE EVIDENCE IN THE CASE NEED NOT

13   ESTABLISH THAT ALL OF THE MEANS OR METHODS SET FORTH IN

14   THE INDICTMENT WERE, IN FACT, AGREED UPON TO CARRY OUT THE

15   ALLEGED CONSPIRACY OR THAT ALL OF THE MEANS OR METHODS

16   WHICH WERE AGREED UPON WERE ACTUALLY USED OR PUT INTO

17   OPERATION.  NEITHER MUST IT BE PROVED THAT ALL OF THE

18   PERSONS CHARGED TO HAVE BEEN MEMBERS OF THE CONSPIRACY

19   WERE SUCH NOR THAT THE ALLEGED CONSPIRATORS ACTUALLY

20   SUCCEEDED IN ACCOMPLISHING THEIR UNLAWFUL OBJECTIVES.

21       WHAT THE EVIDENCE IN THE CASE MUST SHOW BEYOND A

22   REASONABLE DOUBT IS:  FIRST, THAT TWO OR MORE PERSONS IN

23   SOME WAY OR MANNER POSITIVELY OR TACITLY CAME TO A MUTUAL

24   UNDERSTANDING TO TRY TO ACCOMPLISH A COMMON AND UNLAWFUL

25   PLAN, AS CHARGED IN THE INDICTMENT; AND SECOND, THAT THE

635

1   DEFENDANT WHOSE CASE YOU ARE THEN CONSIDERING, KNOWINGLY

2   AND WILLFULLY BECAME A MEMBER OF SUCH CONSPIRACY.

3       ONE MAY BECOME A MEMBER OF A CONSPIRACY WITHOUT FULL

4   KNOWLEDGE OF ALL OF THE DETAILS OF THE UNLAWFUL SCHEME OR

5   THE NAMES AND IDENTITIES OF ALL OF THE OTHER ALLEGED

6   CONSPIRATORS.  SO, IF A DEFENDANT, WITH AN UNDERSTANDING

7   OF THE UNLAWFUL CHARACTER OF A PLAN, KNOWINGLY AND

8   WILLFULLY JOINS IN AN UNLAWFUL SCHEME ON ONE OCCASION,

9   THAT IS SUFFICIENT TO CONVICT THE DEFENDANT FOR CONSPIRACY

10  EVEN THOUGH HE OR SHE HAD NOT PARTICIPATED AT EARLIER

11  STAGES IN THE SCHEME AND EVEN THOUGH HE OR SHE PLAYED ONLY

12  A MINOR PART IN THE CONSPIRACY.

13      OF COURSE, MERE PRESENCE AT THE SCENE OF AN ALLEGED

14  TRANSACTION OR EVENT, OR MERE SIMILARITY OF CONDUCT AMONG

15  VARIOUS PERSONS AND THE FACT THAT THEY MAY HAVE ASSOCIATED

16  WITH EACH OTHER AND MAY HAVE ASSEMBLED TOGETHER AND

17  DISCUSSED COMMON AIMS AND INTERESTS, DOES NOT NECESSARILY

18  ESTABLISH PROOF OF THE EXISTENCE OF A CONSPIRACY.

19      ALSO, A PERSON WHO HAS NO KNOWLEDGE OF A CONSPIRACY

20  BUT WHO HAPPENS TO ACT IN A WAY WHICH ADVANCES SOME OBJECT

21  OR PURPOSE OF A CONSPIRACY, DOES NOT THEREBY BECOME A

22  CONSPIRATOR.

23      SO, MEMBERS OF THE JURY, IF YOU FIND FROM THE

24  EVIDENCE AND BEYOND A REASONABLE DOUBT:  FIRST, THAT TWO

25  OR MORE PERSONS IN SOME WAY OR MANNER POSITIVELY OR

TACITLY CAME TO A MUTUAL UNDERSTANDING TO TRY TO ACCOMPLISH A COMMON AND UNLAWFUL PLAN TO IMPORT COCAINE INTO OR TO EXPORT COCAINE FROM THE UNITED STATES; AND SECOND, THAT THE DEFENDANT WHOSE CASE YOU ARE THEN CONSIDERING, KNOWINGLY AND INTENTIONALLY BECAME A MEMBER OF THE CONSPIRACY, THEN IT WOULD BE YOUR DUTY TO FIND THAT DEFENDANT GUILTY OF COUNT ONE. IF YOU FAIL TO SO FIND, THEN YOU MUST FIND THAT DEFENDANT NOT GUILTY OF COUNT ONE.

COUNT TWO CHARGES THAT ON OR ABOUT DECEMBER 15, 1985 AND CONTINUING UP TO AND INCLUDING MARCH 1992, THE DEFENDANTS, DESMOND SAMUEL SKYERS, WAYNE JAGOO AND VINCENT CLAUDE SKYERS, DID KNOWINGLY AND INTENTIONALLY COMBINE, CONSPIRE AND AGREE WITH EACH OTHER AND WITH VARIOUS OTHER PERSONS TO UNLAWFULLY POSSESS WITH THE INTENT TO DISTRIBUTE A CONTROLLED NARCOTIC SUBSTANCE, COCAINE, IN VIOLATION OF FEDERAL LAW.

TITLE 21 UNITED STATES CODE SECTION 841 (A) (1) PROVIDES IN PERTINENT PART AS FOLLOWS: "IT SHALL BE UNLAWFUL FOR ANY PERSON KNOWINGLY OR INTENTIONALLY TO POSSESS WITH INTENT TO DISTRIBUTE A CONTROLLED SUBSTANCE."

I INSTRUCT YOU THAT COCAINE IS A CONTROLLED SUBSTANCE WITHIN THE MEANING OF THE LAW.

TITLE 21, UNITED STATES CODE SECTION 846 PROVIDES THAT: "ANY PERSON WHO CONSPIRES TO COMMIT ANY OFFENSE DEFINED IN THIS SUBCHAPTER IS PUNISHABLE UNDER FEDERAL

1  LAW."

2      IN ORDER TO ESTABLISH THE OFFENSE PROSCRIBED BY THAT

3  STATUTE, THE GOVERNMENT MUST PROVE EACH OF THE FOLLOWING

4  ELEMENTS BEYOND A REASONABLE DOUBT.  FIRST, THAT TWO OR

5  MORE PERSONS IN SOME WAY OR MANNER POSITIVELY OR TACITLY

6  CAME TO A MUTUAL UNDERSTANDING TO TRY TO ACCOMPLISH A

7  COMMON AND UNLAWFUL PLAN TO POSSESS COCAINE INTENDING TO

8  DISTRIBUTE IT; AND SECOND, THAT THE DEFENDANT WHOSE CASE

9  YOU ARE THEN CONSIDERING, KNOWINGLY AND INTENTIONALLY

10  BECAME A MEMBER OF THE CONSPIRACY.

11      I ALREADY HAVE DEFINED A CONSPIRACY FOR YOU.

12      TO POSSESS WITH INTENT TO DISTRIBUTE SIMPLY MEANS TO

13  POSSESS WITH INTENT TO DELIVER OR TRANSFER POSSESSION OF A

14  CONTROLLED SUBSTANCE TO ANOTHER PERSON, WITH OR WITHOUT

15  ANY FINANCIAL INTEREST IN THE TRANSACTION.

16      SO, MEMBERS OF THE JURY, IF YOU FIND FROM THE

17  EVIDENCE AND BEYOND A REASONABLE DOUBT; FIRST, THAT TWO OR

18  MORE PERSONS IN SOME WAY OR MANNER POSITIVELY OR TACITLY

19  CAME TO A MUTUAL UNDERSTANDING TO TRY TO ACCOMPLISH A

20  COMMON AND UNLAWFUL PLAN TO POSSESS AND TO DISTRIBUTE

21  COCAINE; AND SECOND, THAT THE DEFENDANT WHOSE CASE YOU ARE

22  THEN CONSIDERING KNOWINGLY AND INTENTIONALLY BECAME A

23  MEMBER OF THE CONSPIRACY, THEN IT WOULD BE YOUR DUTY TO

24  FIND THAT DEFENDANT GUILTY OF COUNT TWO.  IF YOU FAIL TO

25  SO FIND, THEN YOU MUST FIND THAT DEFENDANT NOT GUILTY OF

1  COUNT TWO.

2      COUNTS THREE AND FOUR OF THE INDICTMENT PERTAIN ONLY

3  TO DEFENDANT DESMOND SAMUEL SKYERS.  COUNT THREE CHARGES

4  THAT ON OR ABOUT FEBRUARY 15, 1992, THE DEFENDANT DID

5  KNOWINGLY AND INTENTIONALLY CAUSE THE IMPORTATION OF

6  APPROXIMATELY 10 KILOGRAMS OF COCAINE INTO THE UNITED

7  STATES FROM THE ISLAND OF ST. MAARTEN, WHICH IS OUTSIDE

8  THE UNITED STATES, IN VIOLATION OF FEDERAL LAW.

9      COUNT FOUR CHARGES THAT ON OR ABOUT FEBRUARY 22,

10  1992, THE DEFENDANT KNOWINGLY AND INTENTIONALLY CAUSED THE

11  IMPORTATION OF APPROXIMATELY ONE KILOGRAM OF COCAINE INTO

12  THE UNITED STATES FROM ST. MAARTEN, ALSO IN VIOLATION OF

13  FEDERAL LAW.

14      TITLE 21, UNITED STATES CODE SECTION 952 PROVIDES:

15  "IT SHALL BE UNLAWFUL TO IMPORT INTO THE UNITED STATES

16  FROM ANY PLACE OUTSIDE THEREOF, ANY CONTROLLED SUBSTANCE."

17      IN ORDER TO ESTABLISH THE OFFENSE PROSCRIBED BY THIS

18  STATUTE, THE GOVERNMENT MUST PROVE EACH OF THE FOLLOWING

19  ELEMENTS BEYOND A REASONABLE DOUBT.  FIRST, THAT THE

20  DEFENDANT IMPORTED A CONTROLLED SUBSTANCE INTO THE UNITED

21  STATES; AND SECOND, THAT HE DID SO WILLFULLY.

22      I INSTRUCT YOU THAT COCAINE IS A CONTROLLED

23  SUBSTANCE.

24      TO IMPORT INTO THE UNITED STATES MEANS TO BRING INTO

25  THE UNITED STATES FROM SOME PLACE OUTSIDE THEREOF.

639

1      I INSTRUCT YOU FURTHER THAT THE GUILT OF AN ACCUSED

2  IN A CRIMINAL CASE MAY BE ESTABLISHED WITHOUT PROOF THAT

3  THE ACCUSED PERSONALLY DID EVERY ACT CONSTITUTING THE

4  OFFENSE ALLEGED.  THE LAW RECOGNIZES THAT, ORDINARILY,

5  ANYTHING A PERSON CAN DO ALONE MAY ALSO BE ACCOMPLISHED

6  THROUGH DIRECTION OF ANOTHER PERSON AS HIS OR HER AGENT OR

7  BY ACTING IN CONCERT WITH OR UNDER THE DIRECTION OF

8  ANOTHER PERSON OR PERSONS IN A JOINT EFFORT OR ENTERPRISE.

9      TITLE 18, UNITED STATES CODE SECTION 2 PROVIDES:

10  "WHOEVER COMMITS AN OFFENSE AGAINST THE UNITED STATES OR

11  AIDS, ABETS, COUNSELS, COMMANDS, INDUCES OR PROCURES ITS

12  COMMISSION IS PUNISHABLE AS A PRINCIPAL.  WHOEVER

13  WILLFULLY CAUSES AN ACT TO BE DONE, WHICH IF DIRECTLY

14  PERFORMED BY HIM OR ANOTHER, WOULD BE AN OFFENSE AGAINST

15  THE UNITED STATES, IS PUNISHABLE AS A PRINCIPAL."

16      SO, IF THE ACTS OR CONDUCT OF AN AGENT, EMPLOYEE OR

17  OTHER ASSOCIATE OF A DEFENDANT ARE WILLFULLY DIRECTED OR

18  AUTHORIZED BY THE DEFENDANT, OR IF THE DEFENDANT AIDS AND

19  ABETS ANOTHER PERSON BY WILLFULLY JOINING TOGETHER WITH

20  SUCH PERSON IN THE COMMISSION OF A CRIME, THEN THE LAW

21  HOLDS THE DEFENDANT RESPONSIBLE FOR THE ACTS AND CONDUCT

22  OF SUCH OTHER PERSONS JUST AS THOUGH THE DEFENDANT HAD

23  COMMITTED THE ACTS OR ENGAGED IN SUCH CONDUCT.

24      I CAUTION YOU, HOWEVER, THAT BEFORE THE DEFENDANT,

25  DESMOND SAMUEL SKYERS, MAY BE HELD CRIMINALLY RESPONSIBLE

1  FOR THE ACTS OF OTHERS, IT IS NECESSARY THAT THE DEFENDANT

2  WILLFULLY ASSOCIATE IN SOME WAY WITH THE CRIMINAL VENTURE

3  AND WILLFULLY PARTICIPATE IN IT AS IN SOMETHING THE

4  DEFENDANT WISHES TO BRING ABOUT; THAT IS TO SAY, THAT THE

5  DEFENDANT WILLFULLY SEEK BY SOME ACT OR OMISSION TO MAKE

6  THE CRIMINAL VENTURE SUCCEED.

7      OF COURSE, MERE PRESENCE AT THE SCENE OF A CRIME AND

8  KNOWLEDGE THAT A CRIME IS BEING COMMITTED ARE NOT

9  SUFFICIENT TO ESTABLISH THAT A DEFENDANT EITHER DIRECTED

10  OR AIDED AND ABETTED THE CRIME UNLESS YOU FIND BEYOND A

11  REASONABLE DOUBT THAT THE DEFENDANT WAS A PARTICIPANT AND

12  NOT MERELY A KNOWING SPECTATOR.

13      SO, MEMBERS OF THE JURY, IF YOU FIND FROM THE

14  EVIDENCE AND BEYOND A REASONABLE DOUBT:  FIRST, THAT

15  DESMOND SAMUEL SKYERS IMPORTED A CONTROLLED SUBSTANCE INTO

16  THE UNITED STATES; AND SECOND, THAT HE DID SO WILLFULLY,

17  THEN IT WOULD BE YOUR DUTY TO FIND HIM GUILTY OF THE COUNT

18  YOU ARE THEN CONSIDERING.  IF YOU FAIL TO SO FIND, YOU

19  MUST FIND HIM NOT GUILTY.

20      YOU WILL NOTE THAT THE INDICTMENT CHARGES THAT THE

21  OFFENSES WERE COMMITTED ON OR ABOUT A CERTAIN DATE.  THE

22  PROOF NEED NOT ESTABLISH WITH CERTAINTY THE EXACT DATE OF

23  THE ALLEGED OFFENSE.  IT IS SUFFICIENT IF THE EVIDENCE IN

24  THE CASE ESTABLISHES BEYOND A REASONABLE DOUBT THAT THE

25  OFFENSE WHICH YOU ARE CONSIDERING WAS COMMITTED ON A DATE

641

1    REASONABLY NEAR THE DATE ALLEGED.

2        THE WORD "KNOWINGLY," AS THAT TERM HAS BEEN USED FROM

3    TIME TO TIME IN THESE INSTRUCTIONS, MEANS THAT THE ACT WAS

4    DONE VOLUNTARILY AND INTENTIONALLY AND NOT BECAUSE OF

5    MISTAKE OR ACCIDENT.

6        THE WORD "WILLFULLY," AS THAT TERM HAS BEEN USED FROM

7    TIME TO TIME IN THESE INSTRUCTIONS, MEANS THAT THE ACT WAS

8    COMMITTED VOLUNTARILY AND PURPOSELY, WITH THE SPECIFIC

9    INTENT TO DO SOMETHING THE LAW FORBIDS; THAT IS TO SAY,

10   WITH BAD PURPOSE EITHER TO DISOBEY OR DISREGARD THE LAW.

11       MEMBERS OF THE JURY, A SEPARATE CRIME OR OFFENSE IS

12   CHARGED AGAINST EACH OF THE DEFENDANTS IN EACH COUNT OF

13   THE INDICTMENT.  EACH OFFENSE, AND THE EVIDENCE PERTAINING

14   TO IT, SHOULD BE CONSIDERED SEPARATELY.  ALSO, THE CASE OF

15   EACH DEFENDANT SHOULD BE CONSIDERED SEPARATELY AND

16   INDIVIDUALLY.  THE FACT THAT YOU MAY FIND ONE OR MORE OF

17   THE ACCUSED GUILTY OR NOT GUILTY OF ANY OF THE OFFENSES

18   CHARGED SHOULD NOT CONTROL YOUR VERDICT AS TO ANY OTHER

19   OFFENSE OR ANY OTHER DEFENDANT.

20       I CAUTION YOU, MEMBERS OF THE JURY, THAT YOU ARE HERE

21   TO DETERMINE THE GUILT OR INNOCENCE OF THE ACCUSED FROM

22   THE EVIDENCE IN THIS CASE.  THE DEFENDANT IS NOT ON TRIAL

23   FOR ANY ACT OR CONDUCT OR OFFENSE NOT ALLEGED IN THE

24   INDICTMENT.  NEITHER ARE YOU CALLED UPON TO RETURN A

25   VERDICT AS TO THE GUILT OR INNOCENCE OF ANY OTHER PERSON

1    NOT ON TRIAL AS A DEFENDANT IN THIS CASE.

2         ALSO, THE PUNISHMENT PROVIDED BY LAW FOR THE OFFENSE

3    CHARGED IN THE INDICTMENT IS A MATTER EXCLUSIVELY WITHIN

4    THE PROVINCE OF THE COURT OR JUDGE, AND SHOULD NEVER BE

5    CONSIDERED BY THE JURY IN ANY WAY IN ARRIVING AT AN

6    IMPARTIAL VERDICT AS TO THE GUILT OR INNOCENCE OF THE

7    ACCUSED.

8         ANY VERDICT MUST REPRESENT THE CONSIDERED JUDGMENT OF

9    EACH JUROR.  IN ORDER TO RETURN A VERDICT, IT IS NECESSARY

10   THAT EACH JUROR AGREE THERETO.  IN OTHER WORDS, YOUR

11   VERDICT MUST BE UNANIMOUS.

12        IT IS YOUR DUTY AS JURORS TO CONSULT WITH ONE ANOTHER

13   AND TO DELIBERATE IN AN EFFORT TO REACH AGREEMENT, IF YOU

14   CAN DO SO WITHOUT VIOLENCE TO INDIVIDUAL JUDGMENT.  EACH

15   OF YOU MUST DECIDE THE CASE FOR YOURSELF BUT ONLY AFTER AN

16   IMPARTIAL CONSIDERATION OF THE EVIDENCE IN THE CASE WITH

17   YOUR FELLOW JURORS.  IN THE COURSE OF YOUR DELIBERATIONS,

18   DO NOT HESITATE TO RE-EXAMINE YOUR OWN VIEWS AND CHANGE

19   YOUR OPINION IF CONVINCED IT IS ERRONEOUS.  BUT DO NOT

20   SURRENDER YOUR HONEST CONVICTION AS TO THE WEIGHT OR

21   EFFECT OF THE EVIDENCE SOLELY BECAUSE OF THE OPINION OF

22   YOUR FELLOW JURORS OR FOR THE MERE PURPOSE OF RETURNING A

23   VERDICT.  REMEMBER AT ALL TIMES YOU ARE NOT PARTISANS, YOU

24   ARE JUDGES, JUDGES OF THE FACTS.  YOUR SOLE INTEREST IS TO

25   SEEK THE TRUTH FROM THE EVIDENCE IN THE CASE.

1    COUNSEL, APPROACH THE BENCH.

2       (THE FOLLOWING BENCH CONFERENCE WAS HELD.)

3       THE COURT:  ALL RIGHT, COUNSEL.  AT THIS TIME

4  OUT OF THE PRESENCE OF THE JURY, YOU MAY OBJECT TO ANY

5  PART OF THE INSTRUCTIONS I HAVE JUST GIVEN OR REQUEST

6  ADDITIONAL INSTRUCTIONS.

7       MR. MCCULLOUGH:  NO OBJECTION.

8       MS. AGUIRRE:  VINCENT SKYERS HAS NO OBJECTION.

9       MR. CRAWLEY:  I REQUEST YOU GIVE THE ACCOMPLICE

10  WITNESS INSTRUCTIONS THAT WE TENDERED AND THE EFFECT OF

11  THE CO-DEFENDANTS' PLEA AGREEMENT.

12       MR. PARSONS:  YOUR HONOR, I HAVE NO OBJECTIONS,

13  NO FURTHER REQUESTS.

14       (END OF BENCH CONFERENCE.)

15       THE COURT:  MEMBERS OF THE JURY, WHEN YOU RETIRE

16  TO THE JURY ROOM THE FIRST THING YOU SHOULD DO IS TO

17  SELECT ONE OF YOUR NUMBER TO BE YOUR FOREPERSON WHOSE DUTY

18  IT WILL BE TO PRESIDE OVER YOUR DELIBERATIONS BACK IN THE

19  JURY ROOM AND ACT AS YOUR SPOKESPERSON HERE IN COURT.  WE

20  HAVE VERDICT FORMS PREPARED FOR YOU.

21      I HOLD IN MY HAND A PACKET OF MATERIALS.  THE TOP ONE

22  READS:  UNITED STATES OF AMERICA VERSUS DESMOND SAMUEL

23  SKYERS, GIVES THE CASE NUMBER.  WE, THE JURY, FIND THE

24  DEFENDANT, DESMOND SAMUEL SKYERS, BLANK AS TO COUNT ONE,

25  COUNT TWO, THREE AND FOUR.

1    AS YOU DELIBERATE AND ARRIVE AT YOUR VERDICT, YOUR

2    FOREPERSON WILL WRITE THE VERDICT IN BY ENTERING THE WORD

3    "GUILTY" OR WORDS "NOT GUILTY" AS YOU HAVE FOUND WITH

4    REGARD TO THE FOUR COUNTS.  UPON COMPLETION OF ALL FOUR

5    COUNTS, THE FOREPERSON WILL SIGN IT, DATE IT, FOLD IT UP

6    AND PUT IT INTO THE ENVELOPE ATTACHED.  THERE'S A SIMILAR

7    VERDICT FORM FOR EACH OF THE OTHER TWO DEFENDANTS.

8    DURING THE COURSE OF YOUR DELIBERATIONS, IF YOU NEED

9    TO COMMUNICATE WITH ME IN ANY WAY, PLEASE REDUCE YOUR

10   MESSAGE TO WRITING, HAVE IT SIGNED BY YOUR FOREPERSON AND

11   KNOCK ON THE DOOR.  THE MARSHAL WILL BE JUST OUTSIDE YOUR

12   COURTROOM DOOR AND WILL BRING IT TO ME AND I WILL RESPOND

13   TO YOU EITHER BY HAVING YOU BROUGHT BACK INTO THE

14   COURTROOM OR IN WRITING AS WELL.

15   LET ME CAUTION YOU, HOWEVER, IN ANY COMMUNICATION YOU

16   HAVE WITH ME YOU NEVER DISCLOSE TO ME YOUR NUMERICAL

17   DIVISION AT THE TIME.

18   I'M GOING TO ASK YOU TO RETIRE AND THE FIRST THING

19   YOU DO IS TO ELECT YOUR FOREPERSON THEN DECIDE HOW LONG

20   YOU WANT TO GO TO LUNCH AND I AUTHORIZE YOUR FOREPERSON TO

21   THEN TAKE A LUNCHEON RECESS FOR WHATEVER YOU DETERMINE,

22   THIRTY MINUTES, HOUR, HOUR AND-A-HALF, WHATEVER YOU WANT

23   TO DO.  WHEN YOU GET BACK AFTER YOUR LUNCHEON RECESS, YOU

24   MUST NOT START YOUR DELIBERATIONS UNTIL YOU HAVE NOTIFIED

25   ME AND I CAN COME BACK THERE AND COUNT NOSES AND MAKE SURE

1    WE HAVE ALL 12 PRESENT.   THERE MUST NEVER BE ANY

2    DELIBERATIONS UNLESS ALL 12 OF YOU ARE PRESENT IN THE JURY

3    ROOM AT THE SAME TIME.   THAT MEANS THAT DURING BREAKS FOR

4    ANYONE TO GO TO THE REST ROOM OR IF YOU WANT TO TAKE A

5    SMOKING BREAK, WHICH I AUTHORIZE THE FOREPERSON TO DO, YOU

6    MUST NOT HAVE ANY DELIBERATIONS UNTIL ALL THE JURORS ARE

7    BACK IN THE JURY ROOM.

8         ALL OF THE EXHIBITS WILL BE PLACED IN THE JURY ROOM

9    FOR YOUR CONSIDERATION DURING YOUR DELIBERATIONS.

10        (ALTERNATE JURORS EXCUSED.)

11        (JURY OUT AT 1:30 P.M.)

12        (VERDICT AT 4:27 P.M.)

13

14

15

16

17

18

19

20                          END OF VOLUME

21

22

23

24

25

## EXHIBIT B

## U.S. v. McLamb

**(Cite as: 77 F.3d 472, 1996 WL 79438 (4th Cir.(N.C.)))**

NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.

**UNITED STATES of America, Plaintiff-Appellee,**
v.
**Phillip Chestnut McLAMB, Defendant-Appellant.**

No. 95-6773.

Argued Nov. 1, 1995.
Decided Feb. 26, 1996.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, Chief District Judge. (CR-91-46-F, CA-94-852-CV-5-F)

ARGUED: James Baxter Rivenbark, Greensboro, North Carolina, for Appellant. Barbara Dickerson Kocher, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. ON BRIEF: Janice McKenzie Cole, United States Attorney, Raleigh, North Carolina, for Appellee.

E.D.N.C.

AFFIRMED IN PART, VACATED IN PART AND REMANDED.

Before NIEMEYER, HAMILTON, and MICHAEL, Circuit Judges.

OPINION

HAMILTON, Circuit Judge:·

**\*\*1** Phillip Chestnut McLamb (McLamb) appeals from the district court's denial of his motion pursuant to 28 U.S.C.A. § 2255 (West 1994), collaterally attacking his convictions for money laundering, *see* 18 U.S.C.A. § 1956(a)(3) (West Supp.1995), and transaction structuring, *see* 26 U.S.C.A. (I.R.C.) § 6050I(f)(1) (West Supp.1995), and his sentence flowing therefrom. For reasons that follow, we affirm McLamb's convictions, but vacate his sentence and remand for

resentencing consistent with this opinion.

I.

The facts of this case are fully set forth in our opinion on direct appeal, *see United States v. McLamb*, 985 F.2d 1284, 1286-87 (4th Cir.1993), and thus, we restate them only insofar as is necessary to resolve this appeal. McLamb's charges stemmed from two separate incidents connected with a car dealership he owned. The first incident took place in July 1990 with McLamb structuring the sale of a Ford van for the purpose of evading the Internal Revenue Service (IRS) reporting requirement in violation of I.R.C. § 6050I(f)(1). The second incident took place in August 1990 with McLamb laundering "sting" money during the sale of a Lincoln Town Car to an undercover government agent in violation of 18 U.S.C.A. § 1956(a)(3). The undercover agent told McLamb that his brother-in-law wanted to purchase a car with money that had its origin in the sale of illegal drugs. The money was, in fact, "sting" money, provided by the government for the purpose of conducting the undercover sting operation. McLamb offered to accept the money for purchase of the car and told the undercover officer exactly how to structure the transaction to avoid IRS reporting requirements. On the day of the contemplated sale, McLamb instructed the financial officer employed by the dealership to prepare documents for the sale of the Lincoln Town Car in the name of the alleged brother-in-law. The record contains no evidence that indicates the financial officer had any knowledge of the alleged illegal source of the "sting" money. The sting ended when McLamb allowed the financial officer to accept the "sting" money.

McLamb was subsequently indicted on multiple charges arising out of these two incidents. The jury ultimately convicted McLamb of two of them, money laundering arising out of the sting incident with the undercover agent in violation of 18 U.S.C.A. § 1956(a)(3) and transaction structuring arising out of the Ford van sale in violation of I.R.C. § 6050I(f)(1).

McLamb was sentenced on March 9, 1992. The district court calculated McLamb's total offense level on the money laundering count at twenty-five and his total offense level on the transaction structuring count at twenty. McLamb had a criminal history category of I. In reaching the total offense level of twenty-five on the

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

money laundering count, the district court enhanced McLamb's base offense level of twenty, *see* United States Sentencing Commission, *Guidelines Manual* (USSG) § 2S1.1(a)(2), by two-levels for McLamb's role in the offense as an organizer or leader, *see* USSG § 3B1.1(c) (Nov.1991), and by three levels under the 1991 version of USSG § 2S1.1(b)(1) for knowing and believing the funds involved were "the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances," USSG § 2S1.1(b)(1) (Nov.1991). Both enhancements taken together increased McLamb's sentencing range from thirty-three to forty- one months' imprisonment to fifty-seven to seventy-one months' imprisonment. [FN1] The district court sentenced McLamb to seventy-one months' imprisonment. [FN2] McLamb appealed and we affirmed. *See McLamb*, 985 F.2d at 1284. McLamb then filed a motion in the district court under 28 U.S.C.A. § 2255 collaterally attacking his convictions and sentence. In his motion, McLamb claimed that his convictions violated the bar of double jeopardy, the Fourth Amendment's prohibition against illegal searches and seizures, and his Sixth Amendment right to effective assistance of counsel. He also claimed the indictment was insufficient to charge him with money laundering. Next, McLamb claimed the district court's application of the 1991 version of USSG § 2S1.1(b)(1) violated the *Ex Post Facto* Clause. Finally, McLamb claimed the district court erroneously increased his base offense level by two levels pursuant to USSG § 3B1.1(c) for his role as an organizer or leader in a criminal activity. The district court denied the motion *in toto*. This appeal followed.

> FN1. The three-level enhancement taken alone raised McLamb's total offense level from level twenty-two to level twenty-five, thus increasing his sentencing range from forty-one to fifty-one months' imprisonment to fifty-seven to seventy-one months' imprisonment. The two-level enhancement taken alone raised McLamb's total offense level from level twenty-three to level twenty-five, thus increasing his sentencing range from forty-six to fifty-seven months' imprisonment to fifty-seven to seventy-one months' imprisonment.

> FN2. Grouping both counts and using the count with the highest offense level, *see* USSG § 3D1.2(d), the district court used the offense level twenty-five from the money laundering count as McLamb's total offense level in calculating his sentencing range. Without explanation, the district court also

sentenced McLamb separately on the transaction structuring count to sixty months' imprisonment to run concurrently.

## II.

**2 While McLamb has raised several claims in his § 2255 motion, only two merit discussion.

### A.

In the first claim meriting discussion, McLamb contends that his sentence should be vacated and his case should be remanded for resentencing because the district court's three-level increase in his base offense level on the money laundering count pursuant to the 1991 version of USSG § 2S1.1(b)(1) violated the *Ex Post Facto* Clause of the Constitution, *see* U.S. Const. art. I, § 9, cl. 3. Arguing McLamb did not suffer an *ex post facto* violation, the government contends that McLamb should be denied relief. We agree with McLamb. [FN3] As a general rule, a defendant's sentence should be based upon the United States Sentencing Guidelines "in effect on the date the defendant is sentenced." 18 U.S.C.A. § 3553(a)(4) (West Supp.1995). However, amendments to the Sentencing Guidelines occurring after a defendant's offense of conviction but before sentencing should not be applied if doing so would increase his sentence. *See United States v. Morrow*, 925 F.2d 779, 782-83 (4th Cir.1991). Such an increase would violate the *Ex Post Facto* Clause in Article I, Section 9, Clause 3 of the Constitution, which provides that neither Congress nor any State shall pass any "ex post facto Law." U.S. Const. art. I, § 9, cl. 3; *see Collins v. Youngblood*, 497 U.S. 37, 41 (1990) (stating that under the *Ex Post Facto* Clause, legislatures may not retroactively increase the punishment for criminal acts). We now turn to consider whether McLamb has suffered an *ex post facto* violation.

> FN3. Ordinarily, the government's interest in finality of its criminal judgments bars our review of § 2255 claims that could have been raised on direct appeal but were not. *See United States v. Metzger*, 3 F.3d 756, 757-58 (4th Cir.1993), *cert. denied*, 114 S.Ct. 1374 (1994). *See also United States v. Maybeck*, 23 F.3d 888, 891-92 (4th Cir.1994). However, if the government fails to assert this bar, the bar is waived and the cause and prejudice standard is not applied. *Metzger* 3 F.3d at 757. Under such circumstances, it is said that "the government fail[s] to vindicate" its interest in finality. *Id.* In this court, the government

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

proffered that the appropriate standard of review for this claim is *de novo, see* Appellee's Brief at 3, and has not argued that McLamb's failure to raise this claim on direct appeal is bar to our review. Therefore, the government has waived any bar that would apply to our review of this claim as a result of McLamb's failure to raise it on direct appeal.

When McLamb's criminal activities ended in August 1990, USSG § 2S1.1(b)(1) provided a three-level sentencing enhancement for a defendant convicted of money laundering, "[i]f the defendant *knew* that the funds were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances." USSG § 2S1.1(b)(1) (Nov.1989) (emphasis added). The enhancement did not apply to the target of a government sting, who like McLamb, could not know that the funds were the proceeds of unlawful activity. *See United States v. Barton,* 32 F.3d 61 (4th Cir.1994) (holding that under the 1989 version of USSG § 2S1.1(b)(1), a defendant's actual knowledge of the source of the funds was required to trigger enhancement, not mere belief, as can only be the case when sting money is involved). However, by the time of McLamb's sentencing on March 9, 1992, USSG § 2S1.1(b)(1) had been amended to provide a three-level sentencing enhancement for a defendant convicted of money laundering, "[i]f the defendant *knew or believed* that the funds were the proceeds of an unlawful activity involving the manufacture, importation, or distribution of narcotics or other controlled substances." USSG § 2S1.1(b)(1) (Nov.1991) (emphasis added). The amended version of USSG § 2S1.1(b)(1) does apply to a defendant who is the target of a government sting. *See Barton,* 32 F.3d at 67 ("The amendment of the guideline to add the words 'or believed' was, according to the statement of purpose, a 'revis[ion] ... to reflect the enactment' of a new law designed to net targets of government stings who could not know in fact that the money was from illegal trade.").

**3 Under these circumstances, the district court's application of the 1991 version of USSG § 2S1.1(b)(1) to increase McLamb's base offense level by three levels violated the *Ex Post Facto* Clause. The district court used the 1991 version of the Sentencing Guidelines to determine McLamb's sentence. Because the money involved in the money laundering count was "sting" money, McLamb would have been subject to a three-level enhancement under the 1991 version of USSG §

2S1.1(b)(1) but not under the 1989 version. Enhancement of McLamb's base offense level pursuant to the 1991 version of USSG § 2S1.1(b)(1) increased the legal consequences of McLamb's acts that were completed before the effective date of the 1991 version in violation of the *Ex Post Facto* Clause. The enhancement raised McLamb's total offense level from level twenty-two to twenty-five, thus increasing his sentencing range from forty-one to fifty-one months' imprisonment to fifty-seven to seventy-one months' imprisonment. In light of our conclusion that an *ex post facto* violation has occurred, we vacate McLamb's sentence and remand for resentencing using the 1989 version of USSG § 2S1.1(b)(1). [FN4]

FN4. The government also argues that *Barton* announces a new rule for purposes of *Teague v. Lane,* 489 U.S. 288 (1989) (plurality opinion), and its progeny, and thus asserts that we are barred from applying our decision in *Barton* to conclude that the district court's three-level enhancement of McLamb's base offense level under the 1991 version of USSG § 2S1.1(b)(1) violated the *Ex Post Facto* Clause. The government's argument is without merit. *Teague* does not bar the retroactive application on collateral review of a decision concerning the reach of a federal statute, or as here, a sentencing guideline. See *United States v. Dashney,* 52 F.3d 298, 299 (10th Cir.1995); *United States v. McClelland,* 941 F.2d 999, 1001 (9th Cir.1991); *United States v. Tayman,* 885 F.Supp. 832 (E.D.Va.1995); cf. *United States v. Bonnette,* 781 F.2d 357, 362-364 (4th Cir.1986) (pre-*Teague* decision allowing federal habeas prisoner to assert claim for collateral relief based on a subsequent Supreme Court opinion construing a federal criminal statute to exclude the conduct underlying the prisoner's conviction).

**B.**

In the second claim meriting discussion, McLamb seeks vacatur of his sentence and resentencing on his claim that the district court erred by increasing his base offense level on the money laundering count by two-levels for his role as an organizer or leader in a criminal activity. *See* USSG § 3B1.1(c). [FN5] The core of McLamb's claim is that he did not organize or lead anyone who qualified as a "participant" in the conduct of criminal activity, and that an amendment to the commentary of USSG § 3B1.1 after his sentencing makes clear that an enhancement under USSG § 3B1.1 is inappropriate unless he did. *See* USSG § 3B1.1, comment. (n.2) (Nov.1993). According to McLamb,

Case 5:01-cv-00479-BR   Document 1   Filed 06/25/01   Page 31 of 40

the 1993 amendment applies retroactively, because although the Sentencing Commission did not list it as one of the amendments having retroactive effect under USSG § 1B1.10, it did characterize the amendment as "clarif[ying]". USSG, App. C, amd. 500 (effective Nov. 1, 1993).

> FN5. This claim was also not raised on direct appeal. In this court, the government has not asserted that McLamb's failure to raise this claim on direct appeal bars our review. Therefore, the government has waived any bar that would apply to our review of this claim as a result of McLamb's failure to raise it on direct appeal. *See Metzger*, 3 F.3d at 757-58; *supra*, note 3.

USSG § 3B1.1 provides as follows:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels. (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

At sentencing, the presentence report recommended a two-level increase in McLamb's base offense level on the money laundering count under USSG § 3B1.1(c), stating that McLamb "was an organizer and leader of a criminal act." (J.A. 380). The district court adopted this recommendation and finding without comment.

**4 A year and a half after McLamb was sentenced, the Sentencing Commission amended the commentary to USSG § 3B1.1 by adding a new Application Note 2:

To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless had management responsibility over the property, assets, or activities of a criminal organization.

USSG § 3B1.1, comment. (n.2) (Nov.1993). The Commission stated that this amendment "clarifies the operation of[USSG § 3B1.1] to resolve a split among the courts of appeal." USSG, App. C, amd. 500

(effective Nov. 1, 1993). The split, between the First, Third, Sixth and Ninth circuits on the one hand [FN6] and the Fourth [FN7] on the other, concerned whether an enhancement under USSG § 3B1.1 was appropriate if the defendant had only exercised control over property, assets, or criminal activity with no exercise of control over one or more participants. In *Chambers*, 985 F.2d at 1263, our circuit took the view that a defendant's management control over property, assets, or criminal activities could trigger enhancement. *Id.* at 1268. The 1993 amendment to the commentary of USSG § 3B1.1 is not listed in USSG § 1B1.10, which sets forth the amendments that may apply retroactively to reduce a defendant's sentence. *See United States v. Capers*, 61 F.3d 1100, 1109 (4th Cir.1995).

> FN6. *See United States v. Fuentes*, 954 F.2d 151 (3d Cir.), *cert. denied*, 112 S.Ct. 2950 (1992) (requiring degree of control over other persons for USSG § 3B1.1 to apply); *United States v. Mares-Molina*, 913 F.2d 770 (9th Cir.1990) (same); *United States v. Fuller*, 897 F.2d 1217 (1st Cir.1990) (same); *United States v. Carroll*, 893 F.2d 1502 (6th Cir.1990) (same).

> FN7. *See United States v. Chambers*, 985 F.2d 1263 (4th Cir.) (defendant may be a "manager" even though he did not directly supervise other persons), *cert. denied*, 114 S.Ct. 107 (1993).

McLamb argues the amendment is clarifying rather than a substantive change in the law, and thus should be applied retroactively to reduce his sentence despite the fact USSG § 1B1.10 does not list it as an amendment having retroactive effect, *see id.* (court may apply a post-sentence clarifying amendment even though USSG § 1B1.10 does not list it as having retroactive effect). In *Capers*, we recently rejected this very argument, holding the 1993 amendment to the commentary of USSG § 3B1.1 is not clarifying, but amounts to a substantive change in the law, and thus, may not be applied retroactively to reduce a defendant's sentence. *Id.* at 1112-1113. After application of several factors used for distinguishing between a clarifying amendment and an amendment that changes substantive law, we concluded that the amendment:

is not a mere clarification because it works a substantive change in the operation of the guideline in this circuit. The amendment has the effect of changing the law in this circuit. *Before the amendment, a defendant in this circuit could receive the enhancement without having exercised*

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

*control over other persons;* after the amendment, the defendant must have exercised control over other persons to warrant the enhancement.
*Id.* at 1110 (emphasis added).

Although we are convinced that had McLamb been sentenced after the effective date of the amended commentary, the enhancement would have been inappropriate, [FN8] under *Capers,* we may not apply the 1993 amendment retroactively, and thus, the question becomes whether the district court appropriately applied the enhancement under the pre-amendment state of the law. We believe the district court correctly applied the enhancement. McLamb initiated the money laundering transaction with the undercover agent and told him exactly how to structure the transaction to avoid the IRS reporting requirement. McLamb also directed a person under his employ, the financial officer, to prepare a document necessary to complete the money laundering transaction. Thus, although McLamb did not exercise control over "participants" as is now required under the amended version of USSG § 3B1.1, he exercised sufficient control over the criminal activity to warrant the enhancement under pre-amendment law. Accordingly, we affirm the district court's denial of McLamb's motion on this claim.

> FN8. Other than McLamb, the conduct underlying McLamb's money laundering conviction only involved the undercover agent and the financial officer; neither may count as a participant, because neither were criminally responsible for the commission of the offense. *See* USSG § 3B1.1, comment. (n.1) (Nov.1991) ("A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (*e.g.,* an undercover law enforcement officer) is not a participant.").

### C.

**\*\*5** We are left with the consideration of McLamb's appropriate sentencing range on remand. Upon resentencing, the district court will be confronted with an offense level of twenty-two on the money laundering count and twenty on the transaction structuring count. Grouping both offense levels, *see* USSG § 3D1.2(d),

McLamb will have a combined offense level of twenty-two. An offense level of twenty-two will combine with McLamb's criminal history category of I to produce a sentencing range of forty-one to fifty-one months' imprisonment. Our vacation of McLamb's sentence includes the sixty month concurrent sentence the district court gave McLamb on the transaction structuring count. [FN9]

> FN9. Under the grouping principle of USSG § 3D1.2(d), on remand the district court may not give McLamb a separate sentence on the transaction structuring count.

### III.

In sum, we hold the district court's application of the 1991 version of USSG § 2S1.1(b)(1) to increase McLamb's base offense level on the money laundering count violated the *Ex Post Facto* Clause. Accordingly, we vacate McLamb's sentence and remand for resentencing consistent with this opinion. In addition to concluding McLamb's claim pertaining to the organizer or leader enhancement under USSG § 3B1.1(c) is without merit, we have reviewed McLamb's remaining claims and conclude they are without merit. We, therefore, affirm the district court's judgment in all other respects.

*AFFIRMED IN PART, VACATED IN PART AND REMANDED FOR RESENTENCING*

NIEMEYER, Circuit Judge, concurring:

I concur in the opinion of the court except for footnote 3. I cannot join in footnote 3 because it suggests that we obtained our right to review the sentence in this case because "the government has waived any bar that would apply to our review of this claim." In my opinion, the government waived no rights. I believe that the defendant has a substantive right to review an illegal sentence despite his failure to appeal the issue, and I do not believe that we could permit a defendant to remain in prison under an illegal sentence. *See* 28 U.S.C. § 2255; *Sanders v. United States,* 373 U.S. 1, 12 (1963) (§ 2255 was enacted to provide expeditious remedy for correcting erroneous sentences of federal prisoners without resort to habeas corpus).

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NORTH CAROLINA



FILED

JUN 25 2001

DAVID /. ........ ...
U.S. DISTRICT COUR:
E. DIST. NO. CAR.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Respondent, | * | |
| | | Case No._____ |
| -vs- | * | Crim No. 5:93-CR-38-1-BR |
| DESMOND SKYERS, | * | |
| Petitioner. | * | |

\* \* \* \* \* \* \*

MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO
28 U.S.C. SECTION 2255

---

The Petitioner submits the following memorandum in support of his motion to vacate the sentence, pursuant to 28 USC § 2255. The Petitioner submits that newly developed case law requires reversal of the sentence in this case.

## I. NEWLY DEVELOPED CASE LAW REQUIRES REVERSAL OF THE SENTENCE

The Petitioner submits that new Supreme Court precedent requires that the Petitioner receive a new sentencing proceeding.

On June 26, 2000, the Supreme Court decided the case of Apprendi v. New Jersey. 530 U.S. --- (2000) The holding of the Court in Apprendi is crystal clear, and warrants no detailed analysis. The Court held "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at ---

In the case of United States v. Flowal, 234 F.3d 932 (6th C. 2000), the Sixth Circuit overturned the sentence of a defendant

based upon this holding. In that case, the defendant was convicted of possession with the intent to distribute cocaine. The defendant was sentenced to life imprisonment, based upon the sentencing court's finding that more than 5 kilograms of cocaine were involved in the offense. The court overturned, finding that, pursuant to Apprendi, the amount of drugs must be determined using a beyond a reasonable doubt standard and, since the jury did not make such a finding, the defendant could not be sentenced above the minimum statutory range for 21 U.S.C. § 841, that being 20 years, without a finding by the jury. The Government argued that because the amount of drugs was largely uncontested (the only contest being whether the amount was 4.997 or over 5 kilograms) that any error was harmless. Id. at 937 The court determined, however, that the Government did not meet its burden because it did not prove the amount of drugs beyond a reasonable doubt therefore, there could be no harmless error. The court therefore remanded for further proceedings. Id. at 938

In the case of United States v. Vasquez-Zamora, --- F.3d ---, 2001 WL 585127 (5th C. 2001), the Fifth Circuit remanded for a new sentencing proceeding where the defendant dealt in marijuana, and the amount of marijuana was not determined by the jury. The court held that the sentence of 65 months on two counts was in excess of the 60 month maximum sentence, and remanded for a new sentencing proceeding. Id. at ---

Likewise, in the case of United States v. Ray, 250 F.3d 596 (8th C. 2001), the court, at sentencing, determined the appropriate amount of marijuana to attribute to the defendant,

and imposed a sentence of 97 months. On appeal, the Eighth Circuit applied this Court's *Apprendi* decision, and determined that the sentence was invalid, as it was over the 60 month maximum of § 841(b)(1)(D). The court therefore remanded for a new sentencing hearing.

Finally, this Circuit has held in a similar fashion. In the case of <u>United States v. Angle</u>, 230 F.3d 113 (4th C. 2000), the defendants conspiracy to distribute cocaine. The jury did not pass on the amount of drugs involved in the offense; rather, the court determined the drug amount at sentencing. On appeal, the defendants raised an argument regarding <u>Apprendi</u>. This Court found that "There was no drug quantity charged in the indictment (JA 52) or submitted to the jury. (JA 626-27). Accordingly, applying *Apprendi*, the jury's finding of a violation of § 846 authorizes sentences for the defendants under § 841(b)(1)(C) to terms of not more than twenty years." <u>Id.</u> at 123 Accordingly, the court remanded for a new sentencing proceeding. The Petitioner notes that this case was vacated on January 17, 2001, for en banc review.

In the present case, a similar result must occur. First, a review of the jury instructions clearly indicates that the jury did not pass on the quantity of drugs involved in the offense. (Exhibit A) Rather, the Court determined the amount of drugs involved in the Petitioner's offense at sentencing and at re-sentencing. Further, the Petitioner has received a sentence in excess of that prescribed by § 841(b)(1)(C), as he is currently serving a sentence of 360 months. Based upon these facts, it is

clear that the Petitioner is entitled to a new sentencing proceeding.

The Petitioner submits that the Apprendi case is clearly entitled to retroactive effect. First, the Petitioner submits that this is a determination of a substantive criminal statute, and not a procedural rule, that a Teague analysis does not apply. The standard announced in Teague v. Lane, 429 U.S. 288 (1989) only applies to procedural new rules, and not issues of substantive law. Further, where the Supreme Court decides a case that interprets a statute, this Circuit has held that the application should be given retroactive effect. United States v. Harris, 183 F.3d 313 (4th C. 1999) (applying Bailey to a § 2255 petition) Further, as the Court found in United States v. McLamb, 77 F.3d 472 (4th C. 1996 (unpublished, attached as Exhibit B), "Teague does not bar the retroactive application on collateral review of a decision concerning the reach of a federal statute, or, as here, a sentencing guideline." Id. at *3 Therefore, the case is entitled to retroactive application.

Further, the case is entitled to retroactive application because the Petitioner raised the issue of the amount of drugs and the Government meeting its burden of proof to the court on direct review. In the case of Davis v. United States, 417 U.S. 333 (1963), the Supreme Court held that § 2255 motions permit relitigation of an issue raised on direct appeal if the defendant is in custody and there is an intervening change of law. Therefore, the Petitioner is entitled to application of this case on that basis.

Finally, the Petitioner would submit that, even if _Teague_ rules regarding retroactivity apply, that this Court is still entitled to allow retroactive application. In the case of _O'Dell v. Netherland_, 521 U.S. 151 (1997), the Supreme Court outlined the _Teague_ exceptions to the non-retroactivity rule. The rule will not apply in two situations: (1) where the case forbids criminal punishment of certain primary conduct or rules prohibiting categories of punishment for classes of defendants based upon status or offense, and (2) where a "watershed" rule of criminal procedure is announced that implicates the fundamental fairness and accuracy of the criminal proceedings. _Id._ at 157

The Petitioner would submit that an _Apprendi_ claim would fall under the second _Teague_ exception. At least one district court has held this to be applicable. In the case of _United States v. Hernandez_, --- F.Supp.2d ---, 2001 WL 339164 (N.D. Ohio 2001), the court reviewed the _Teague_ analysis on retroactivity, and determined that the case should be given retroactive effect because _Apprendi_ clearly improved the accuracy of the conviction and sentence. Further, the court noted that the "reasonable doubt" standard was one of great importance in our system of jurisprudence, and therefore, should be given great weight to ensure fundamental fairness. Thus, the court determined that under the second _Teague_ exception, _Apprendi_ should have retroactive application.

The Petitioner recognizes that this Circuit has recently held that _Apprendi_ is not applicable to collateral review. See _United States v. Sanders_, 247 F.3d 139 (4th C. 2001) However, the

Petitioner submits that, based upon the above arguments, <u>Sanders</u> was wrongly decided.  Further, until the Supreme Court or this Circuit en banc determines the issue of retroactivity, the Petitioner should have this issue determined on its merits.

Therefore, the Petitioner submits that he is entitled to a new sentencing proceeding.

In conclusion, the Petitioner asserts that he has provided the proof necessary for a hearing on these matters. The Petitioner requests a vacation of his sentence based upon newly developed case law requiring reversal of the sentence.

Respectfully submitted,

Kevin Schad
Attorney for Petitioner
Schad & Cook
6310 E. Kemper Rd.
Suite 125
Cincinnati, OH 45241
(513) 489-8990
Fax (513) 469-5793

**NOTE NEW ADDRESS EFFECTIVE 7/5/01**
**Schad & Cook**
**8240 Beckett Park Dr.**
**Indian Springs OH 45011**
**(513) 870-4980**
**Fax (513) 870-4984**